1  MATTHEW A. MACDONALD, SBN 255269
   TREVOR N. TEMPLETON, SBN 308896
2  MADELYN Y. CHEN, SBN 346126
   ROMAN A. GIEROK, SBN 361158
3  WILSON SONSINI GOODRICH & ROSATI
   Professional Corporation
4  953 East 3rd Street, Suite 100
   Los Angeles, CA  90013-1952
5  Telephone:   (323) 210-2900
   Facsimile:    (866) 974-7329
6  Email:   matthew.macdonald@wsgr.com
            ttempleton@wsgr.com
7            madelyn.chen@wsgr.com
            rgierok@wsgr.com
8
   CAITLIN MCKELVIE, *pro hac vice*
9  WILSON SONSINI GOODRICH & ROSATI
   Professional Corporation
10 95 S. State Street, Suite 1000
   Salt Lake City, UT 84111
11 Telephone:   (801) 401-8510
   Facsimile:   (866) 974-7329
12 Email:    cmckelvie@wsgr.com

13 Attorneys for Defendants
   LIVERAMP HOLDINGS, INC. and
14 LIVERAMP, INC.

15                    UNITED STATES DISTRICT COURT

16                   NORTHERN DISTRICT OF CALIFORNIA

17                        SAN FRANCISCO DIVISION

18
   CHRISTINE RIGANIAN and DONNA          ) Case No.: 4:25-cv-824-JST
19 SPURGEON, *on behalf of themselves and all* )
   *others similarly situated*,               ) **DEFENDANTS' REPLY IN SUPPORT**
20                                         ) **OF MOTION TO DISMISS FIRST**
                   Plaintiff,             ) **AMENDED CLASS ACTION**
21                                         ) **COMPLAINT**
                                          )
22        v.                              )
                                          )
23 LIVERAMP HOLDINGS, INC., and           ) Before: Hon. Judge Jon S. Tigar
   LIVERAMP, INC. *corporations organized under* ) Date: July 17, 2025
24 *the laws of the State of Delaware*,      ) Time: 2:00 p.m.
                                          )
25              Defendants.
   _____

26

27

28

1

**TABLE OF CONTENTS**

2

**Page**

3   I.    INTRODUCTION ............................................................................................................. 1

4   II.   ARGUMENT ................................................................................................................... 2

5         A.    Plaintiffs' Procedural Arguments Are Without Merit. ........................................... 2

6         B.    Plaintiffs Fail to Adequately Plead Invasion of Privacy Claims. ........................... 3

7               1.    Plaintiffs Fail to Allege a Reasonable Expectation of Privacy. .................. 4

8               2.    Plaintiffs Fail to Allege Highly Offensive Conduct. ................................... 6

9               3.    The California Legislature and Voters Have Not Deemed
                      LiveRamp's Condut to Be Highly Offensive. ............................................ 9

10              4.    Plaintiffs' Data Marketplace Claims Fail. ................................................... 9

11        C.    Plaintiffs Fail to State a Claim Under CIPA or the ECPA. ................................... 11

12              1.    The Crime-Tort Exception Does Not Overcome LiveRamp's
13                    Customers' Consent under the ECPA. ....................................................... 11

14              2.    LiveRamp Did Not Read or Attempt to Read Contents in Transit. .......... 13

15              3.    Plaintiffs Have Not Alleged LiveRamp Operates a Pen Register. ............ 14

16        D.    Plaintiffs Fail to Plead an Unjust Enrichment Claim. .......................................... 15

17  III.  CONCLUSION ............................................................................................................. 15

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Alan v. JP Morgan Chase Bank, Nat'l Ass'n*,
  2020 WL 5757390 (C.D. Cal. Sept. 23, 2020) .................................................................... 2

*Angeles v. U.S. Airways, Inc.*,
  2013 WL 622032 (N.D. Cal. Feb. 19, 2013) ...................................................................... 2

*B.K. v. Desert Care Network*,
  2024 WL 1343305 (C.D. Cal. Feb. 1, 2024) .................................................................... 12

*Batzel v. Smith*,
  333 F.3d 1018 (9th Cir. 2003) .......................................................................................... 11

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ....................................................................................................... 3, 6

*Breazeale v. Victim Servs., Inc.*,
  878 F.3d 759 (9th Cir. 2017) ............................................................................................ 11

*Brown v. Google*,
  525 F. Supp. 3d. 1049 (N.D. Cal. 2021) ........................................................................... 12

*Brooks v. Thompson Reuters Corp.*,
  2021 WL 3621837, at *1 (N.D. Cal. Aug. 16, 2021) .......................................................... 6

*Carafano v. Metrosplash.com, Inc.*,
  339 F.3d 1119 (9th Cir. 2003) .......................................................................................... 11

*Castillo v. Costco Wholesale Corp.*,
  2024 WL 4785136 (W.D. Wash. Nov. 14, 2024) ............................................................... 12

*Cousin v. Sharp Healthcare*,
  681 F. Supp. 3d 1117 (S.D. Cal. 2023) .............................................................................. 7

*Cusano v. Klein*,
  264 F.3d 936 (9th Cir. 2001) .............................................................................................. 3

*DeMille v. Am. Fed'n of Radio Artists*,
  31 Cal. 2d 139 (1947) ....................................................................................................... 15

*Dyroff v. Ultimate Software Grp., Inc.*,
  934 F.3d 1093 (9th Cir. 2019) .................................................................................... 10, 11

*Enea v. Mercedes-Benz USA, LLC*,
  2019 WL 402315 (N.D. Cal. Jan. 31, 2019) ....................................................................... 2

*In re Facebook, Inc. Internet Tracking Litig.*,
  956 F.3d 589 (9th Cir. 2020) ............................................................................... 1, 4, 7, 14

*F.T.C. v. Accusearch, Inc.*,
    2007 WL 4356786 (D. Wyo. Sept. 28, 2007) ................................................................ 11

*F.T.C. v. Accusearch, Inc.*,
    570 F.3d 1187 (10th Cir. 2009) .................................................................................... 11

*F.T.C. v. Kochava*,
    715 F. Supp. 3d 1319, 1323-25 (D. Idaho 2024) ........................................................ 5, 6

*Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*,
    521 F.3d 1157 (9th Cir. 2008) .................................................................................. 10, 11

*Folgelstrom v. Lamps Plus, Inc.*,
    195 Cal. App. 4th 986 (2011) ........................................................................................ 7

*Gershman v. Bayer HealthCare LLC*,
    2015 WL 2170214 (N.D. Cal. May 8, 2015) ................................................................. 2

*In re Google Inc. Gmail Litig.*,
    2014 WL 1102660 (N.D. Cal. Mar. 18, 2014) ............................................................ 12

*In re Google, Inc. Privacy Pol'y Litig.*,
    2015 WL 4317479 (N.D. Cal. July 15, 2015) ............................................................ 8, 9

*In re Google, Inc. Privacy Pol'y Litig.*,
    58 F. Supp. 3d 968 (N.D. Cal. 2014) ............................................................................ 8

*Griffith v. TikTok, Inc.*,
    697 F. Supp. 3d 963 (C.D. Cal. 2023) ........................................................................... 6

*Griffith v. TikTok, Inc.*,
    2024 WL 5279224 (C.D. Cal. Dec. 24, 2024) ............................................................... 6

*In re Grp. Health Plan Litig.*,
    709 F. Supp. 3d 707 (D. Minn. 2023) .......................................................................... 12

*Hammerling v. Google LLC*,
    615 F. Supp. 3d 1069 (N.D. Cal. 2022) ...................................................................... 7, 8

*Hansen v. Marin Gen. Hosp.*,
    2018 WL 4638606 (N.D. Cal. Sept. 24, 2018) .............................................................. 3

*Hazel v. Prudential Fin., Inc.*,
    2023 WL 3933073 (N.D. Cal. June 9, 2023) (*sub nom. Torres*) ............................ 13, 14

*Hernandez v. Hillsides, Inc.*,
    47 Cal. 4th 272 (2009) ............................................................................................... 8, 9

*Hill v. Nat'l Collegiate Athletic Assn.*,
    7 Cal. 4th 1 (1994) ........................................................................................................ 7

*Hill v. Opus Corp.*,
    41 F. Supp. 2d 1070 (C.D. Cal. 2011) ........................................................................... 2

*Hubbard v. Google, LLC*,
   2024 WL 3302066 (N.D. Cal. July 1, 2024) ...................................................... 1, 4, 6, 7, 9

*Ind. Pub. Ret. Sys. v. Pluralsight, Inc.*,
   45 F.4th 1236 (10th Cir. 2022) ........................................................................................... 2

*Katz-Lacabe v. Oracle Am., Inc.*,
   668 F. Supp. 3d 928 (N.D. Cal. 2023) .............................................................. 5, 8, 12, 15

*Kellman v. Spokeo, Inc.*,
   599 F. Supp. 3d 877 (N.D. Cal. 2022) (UCL) ................................................................. 9

*La Park La Brea A LLC v. Airbnb, Inc.*,
   285 F. Supp. 3d 1097 (C.D. Cal. 2017) .......................................................................... 11

*Levitt v. Yelp! Inc.*,
   2011 WL 5079526 (N.D. Cal. Oct. 26, 2011) ................................................................ 11

*Levitt v. Yelp! Inc.*,
   765 F.3d 1123 (9th Cir. 2014) .......................................................................................... 11

*Licea v. Hickory Farms LLC*,
   2024 WL 1698147 (Cal. Super. Ct. Mar. 13, 2024) ....................................................... 14

*Lloyd v. Facebook, Inc.*,
   2022 WL 4913347 (N.D. Cal. Oct. 3, 2022) ..................................................................... 2

*Marn v. McCully Assocs.*,
   667 F. App'x 978 (9th Cir. 2016) ...................................................................................... 2

*Mastel v. Miniclip SA*,
   549 F. Supp. 3d 1129 (E.D. Cal. 2021) ........................................................................... 14

*McCoy v. Alphabet, Inc.*,
   2021 WL 405816 (N.D. Cal. Feb. 2, 2021) ................................................................... 6, 8

*In re Meta Pixel Healthcare Litig.*,
   647 F. Supp. 3d 778 (N.D. Cal. 2022) ............................................................................ 12

*Mintz v. Mark Barelstein Assocs.*,
   906 F.Supp.2d 1017 (C.D. Cal. Nov. 1, 2012) ................................................................. 9

*Mirmalek v. L.A. Times Commc'ns LLC*,
   2024 WL 5102709 (N.D. Cal. Dec. 12, 2024) .................................................................. 9

*In re Nickelodeon Cons. Priv. Litig.*,
   827 F. 3d 262 (3d Cir. 2016) ......................................................................................... 7, 8

*Pena v. GameStop, Inc.*,
   670 F. Supp. 3d 1112 (S.D. Cal. 2023) ........................................................................... 12

*Perez v. Banana Republic, LLC*,
   2014 WL 2918421 (N.D. Cal. June 26, 2014) ................................................................... 2

*Planet Green Cartridges, Inc. v. Amazon.Com, Inc.*,
    2025 WL 869209 (9th Cir. 2025) .......................................................................... 2

*Planned Parenthood Fed'n of Am. v. Ctr. for Med. Progress*,
    214 F. Supp. 3d 808 (N.D. Cal. 2016) ............................................................... 12

*Planned Parenthood Fed'n v. Newman*,
    51 F.4th 1125 (9th Cir. 2022) ............................................................................. 12

*Pub. Pension Fund Grp. v. KV Pharm. Co.*,
    679 F.3d 972 (8th Cir. 2012) ................................................................................ 2

*R.C. v. Walgreen Co.*,
    2024 WL 2263395 (C.D. Cal. May 9, 2024) ...................................................... 12

*Ret. Sys. v. DocGo Inc.*,
    2025 WL 951251 (S.D.N.Y. Mar. 28, 2025) ........................................................ 2

*Rodriguez v. Google, LLC*,
    2021 WL 2026726 (N.D. Cal. May 21, 2021) ................................................... 12

*Roe v. Amgen Inc.*,
    2024 WL 2873482 (C.D. Cal. June 5, 2024) ...................................................... 12

*Rogozinski v. Reddit, Inc.*,
    2023 WL 4475581 (N.D. Cal. July 11, 2023) ...................................................... 2

*Ross v. ATT Mobility, LLC*,
    2020 WL 9848766, at *8 (N.D. Cal. May 14, 2020) ............................................ 5

*Russell v. Walmart, Inc.*,
    680 F. Supp. 3d 1130 (N.D. Cal. 2023) ............................................................. 15

*Safari Club Int'l v. Rudolph*,
    862 F.3d 1113 (9th Cir. 2017) ............................................................................... 9

*Sanchez v. Cars.com Inc.*,
    2025 WL 487194 (Cal. Super. Ct. Jan. 27, 2025) ............................................. 14

*Schulken v. Wash. Mut. Bank, Henderson, NV*,
    2010 WL 3987680 (N.D. Cal. Oct. 12, 2010) ...................................................... 2

*Shah v. Fandom, Inc.*,
    754 F. Supp. 3d 924 (N.D. Cal. 2024) .............................................................. 14

*Silva v. Haleon US Inc.*,
    758 F. Supp. 3d 1082 (N.D. Cal. 2024) ............................................................... 4

*Staley v. Gilead Sciences, Inc.*,
    2020 WL 5507555 (N.D. Cal. July 29, 2020) ...................................................... 2

*Stein v. Edward-Elmhurst Health*,
    2025 WL 580556 (N.D. Ill. Feb. 21, 2025) ....................................................... 12

*Thomas v. Papa Johns Int'l, Inc.*,
  2024 WL 2060140 (S.D. Cal. May 8, 2024) .................................................................. 4, 7

*Thomas v. Papa Johns Int'l, Inc.*,
  2025 WL 1704437 (9th Cir. June 18, 2025) ...................................................................... 4

*Torres v. Prudential Fin., Inc.*,
  2025 WL 1135088 (N.D. Cal. Apr. 17, 2025) ........................................................... 13, 14

*U.S. Dep't of Def. v. Fed. Lab. Rels. Auth.*,
  510 U.S. 487 (1994) ........................................................................................................ 6

*U.S. Dep't of Just. v. Reps. Comm. For Freedom of Press*,
  489 U.S. 749 (1989) ........................................................................................................ 6

*USA Petroleum Co. v. Atl. Richfield, Co.*,
  577 F. Supp. 1296 (C.D. Cal. 1983) ................................................................................ 2

*Yelp Inc. v. Google LLC*,
  2025 WL 1168900 (N.D. Cal. Apr. 22, 2025) .................................................................. 3

*Zeleny v. Burge*,
  2022 WL 18284878 (C.D. Cal. Dec. 20, 2022) ................................................................ 3

*In re Zerbe*,
  60 Cal. 2d 666 (1964) .................................................................................................... 15

*In re Zoom Video Commc'ns Inc. Priv. Litig.*,
  525 F. Supp. 3d 1017 (N.D. Cal. 2021) ........................................................................... 4

## STATUTES

Cal. Civ. Code § 1798.100(d) ......................................................................................... 10

Cal. Penal Code § 4 ........................................................................................................ 15

## RULES

Fed. R. Civ. P. 12 ............................................................................................................. 2

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

The Opposition confirms that Plaintiffs seek a transformation of privacy law, one that would overturn the balance struck by California voters and effectively ban much of the normal business activity that keeps the internet free.  Plaintiffs now say that the aggregation of browsing data alone—even if it was lawfully collected and not individually sensitive—creates an actionable privacy claim.  But the reality is courts have long recognized that online browsing activity is not private.  And the "aggregation" of that data for the purpose of delivering targeted ads has similarly been recognized as a legitimate business activity by courts, the Legislature, and voters.  *See generally Hubbard v. Google, LLC*, 2024 WL 3302066, at *7 (N.D. Cal. July 1, 2024).  Moreover, the rule Plaintiffs have proposed is illogical and inconsistent with the Ninth Circuit's decision in *Facebook*.  *See In re Facebook, Inc. Internet Tracking Litig*., 956 F.3d 589 (9th Cir. 2020).  The cases that Plaintiffs cite involved extreme facts not present here, such as deception, tracking of sensitive information, and/or disclosure of personally identifiable information to third parties.  None of Plaintiffs' cited authorities permit Plaintiffs to deem ordinary business activity a "highly offensive" activity that clears the "high bar" of showing an actionable privacy violation.

Plaintiffs' other arguments fare no better.  *First*, Plaintiffs cannot shield their meritless privacy claims from scrutiny by pointing to procedure.  Courts in this Circuit can—and routinely do—dispose of parts of claims at the motion to dismiss stage.  This is particularly appropriate here, where Plaintiffs have combined every one of LiveRamp's disparate products into a single claim.

*Second*, Plaintiffs' Section 230 arguments blur the fundamental line separating *third-party* content and LiveRamp's (purported) *first-party* content.  The Amended Complaint's core theory is that LiveRamp should be held liable for "sensitive" content posted on Data Marketplace— exactly what Section 230 precludes.  None of Plaintiffs' attempts to plead around this bar succeed.

*Third*, Plaintiffs' wire-tapping claims fail because (i) the crime-fraud exception does not apply; (ii) Plaintiffs have not alleged any facts demonstrating that LiveRamp attempted to read the communications in transit; and (iii) as California courts have acknowledged, it would be absurd and contrary to the rule of lenity to construe a statute criminalizing the unauthorized use of "pen

registers" to outlaw basic internet tracking software that is integral to the operation of the internet.

*Finally*, Plaintiffs fail to support their unjust enrichment claim with a plausible allegation of "mistake, fraud, coercion, or request." Nor do they address their own receipt of benefits in the form of free use of third-party websites that collected their information in exchange for access.

## II.    ARGUMENT

### A.    Plaintiffs' Procedural Arguments Are Without Merit.

Although Plaintiffs claim they know "of no authority" dismissing portions of a claim, (Opp. at 6), courts in this Circuit routinely do exactly that.[1] *See, e.g.*, *Staley v. Gilead Sciences, Inc.*, 2020 WL 5507555, at *11 (N.D. Cal. July 29, 2020) ("Often, a plaintiff asserts a single cause of action that is predicated on more than one liability theory, and a court eliminates one theory through a motion to dismiss."); *Perez v. Banana Republic, LLC*, 2014 WL 2918421, at *2 (N.D. Cal. June 26, 2014) ("Under Rule 12(b)(6), a court may dismiss a claim that is grouped together with other claims in a single cause of action, without dismissing the entire cause of action.").[2]

The Ninth Circuit has never adopted Plaintiffs' interpretation of Rule 12. To the contrary, multiple Ninth Circuit decisions endorse dismissing portions of a cause of action that do not support a plausible claim, without dismissing the claim in its entirety. *See Planet Green Cartridges, Inc. v. Amazon.Com, Inc.*, 2025 WL 869209, at *1-2 (9th Cir. 2025) (affirming dismissal of misrepresentation claims "to the extent [they were] directed to statements published by third parties on Amazon.com product listings"); *see also Marn v. McCully Assocs.*, 667 F. App'x 978, 979 (9th Cir. 2016) (holding district court properly dismissed plaintiffs' claim "[t]o the extent that appellants sought injunctive relief or money damages" but dismissing as moot the

---

[1] So too in other Circuits. *Ind. Pub. Ret. Sys. v. Pluralsight, Inc.*, 45 F.4th 1236, 1248 (10th Cir. 2022); *Pub. Pension Fund Grp. v. KV Pharm. Co.*, 679 F.3d 972, 983-85 (8th Cir. 2012); *Genese Cnty. Emps.' Ret. Sys. v. DocGo Inc.*, 2025 WL 951251, at *9-10 (S.D.N.Y. Mar. 28, 2025).

[2] *See also Rogozinski v. Reddit, Inc.*, 2023 WL 4475581, at *8 (N.D. Cal. July 11, 2023); *Lloyd v. Facebook, Inc.*, 2022 WL 4913347, at *8 (N.D. Cal. Oct. 3, 2022); *Schulken v. Wash. Mut. Bank, Henderson, NV*, 2010 WL 3987680, at *5 (N.D. Cal. Oct. 12, 2010); *Angeles v. U.S. Airways, Inc.*, 2013 WL 622032, at *12 (N.D. Cal. Feb. 19, 2013); *Enea v. Mercedes-Benz USA, LLC*, 2019 WL 402315, at *7 (N.D. Cal. Jan. 31, 2019); *Gershman v. Bayer HealthCare LLC*, 2015 WL 2170214, at *5 (N.D. Cal. May 8, 2015); *Hill v. Opus Corp.*, 841 F. Supp. 2d 1070, 1082 (C.D. Cal. 2011); *USA Petroleum Co. v. Atl. Richfield, Co.*, 577 F. Supp. 1296, 1308 (C.D. Cal. 1983); *Alan v. JP Morgan Chase Bank, Nat'l Ass'n*, 2020 WL 5757390, at *4-5 (C.D. Cal. Sept. 23, 2020).

claim "[t]o the extent that appellants sought declaratory relief"); *Cusano v. Klein*, 264 F.3d 936, 942-45 (9th Cir. 2001) (describing partial dismissal of plaintiffs' claims earlier in the litigation).[3]

This outcome follows the Supreme Court's mandate in *Twombly* that "[a] complaint, *or portion thereof*, should be dismissed if it fails" to state a plausible claim for relief. *See Hansen v. Marin Gen. Hosp.*, 2018 WL 4638606, at *5 (N.D. Cal. Sept. 24, 2018) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554 (2007)). It is also sound judicial policy. Nothing is gained by allowing a party to "evade the dismissal of a claim by packaging it together with other more meritorious claims under a single cause of action." *Zeleny v. Burge*, 2022 WL 18284878, at *3 (C.D. Cal. Dec. 20, 2022); *see Yelp Inc. v. Google LLC*, 2025 WL 1168900, at *17-18 (N.D. Cal. Apr. 22, 2025). Doing so would needlessly expand the scope of discovery to conduct for which Plaintiffs plead no plausible theory of liability, increasing costs and burdening the Court's docket.

These concerns are particularly acute in this case, where Plaintiffs advance shotgun theories aimed at virtually every LiveRamp product. Plaintiffs should not be permitted to proceed on legally meritless claims simply because they combined all LiveRamp products together in a single cause of action. Although Plaintiffs argue that Attribute Enrichment is too enmeshed with other products to be separately considered, Plaintiffs themselves allege that this product has unique features *not found in other products*. (AC ¶ 110 (alleging that Attribute Enrichment allows a "*uniquely* invasive and comprehensive form of surveillance").)

### B.    Plaintiffs Fail to Adequately Plead Invasion of Privacy Claims.

Plaintiffs' privacy claims contravene longstanding precedent recognizing the absence of privacy on the internet, the expressed intentions of the voters and the Legislature, and California law recognizing that the collection of information is legitimate and normal business activity. In Plaintiffs' telling, any company that aggregates information for use in ad delivery is subject to suit, even if that information is public and reveals nothing sensitive. Far from supporting this novel and sweeping theory, the Ninth Circuit's decision in *Facebook* refutes it. *Facebook* makes clear

---

[3] Plaintiffs' only Court of Appeals case—an out-of-circuit decision from the Seventh Circuit—is readily distinguishable. (Opp. at 6-7.) In *BBL, Inc. v. City of Angola*, defendants moved to dismiss *elements* of a single claim, which LiveRamp does not do.  809 F.3d 317, 325 (7th Cir. 2015).

that a cause of action based on data aggregation requires a showing that the defendant made misrepresentations and collected sensitive data. Plaintiffs plead no such facts.

### 1. Plaintiffs Fail to Allege a Reasonable Expectation of Privacy.

The Opposition ostensibly concedes the general principle that interactions on the internet are not private. *See Thomas v. Papa Johns Int'l, Inc.*, 2024 WL 2060140, at *1 (S.D. Cal. May 8, 2024) (collecting cases), *aff'd*, 2025 WL 1704437 (9th Cir. June 18, 2025). The Opposition does not attempt to argue that LiveRamp or any customer misled anyone about what data would be collected or how it would be used. Although Plaintiffs call the collection "surreptitious," the Opposition does not point to any particularized facts supporting that assertion. *See Hubbard*, 2024 WL 3302066, at *7 n. 9. Indeed, the Opposition appears to concede that data collection and sharing are broadly disclosed in applicable privacy policies.[4] It does not argue that any of the specific data collected was sensitive or disclosed sensitive facts about Plaintiffs. The analysis should stop there.

Relying on a footnote in *Facebook*, Plaintiffs offer the novel theory that the aggregation of online data *alone* can create a reasonable expectation of privacy. (Opp. at 9 (citing *Facebook*, 956 F.3d at 604 n.7).) But the *Facebook* court did not deem the entire digital data industry a privacy violation in a footnote. Rather, it held that the inquiry requires looking at *both* the "manner of collection" *and* "whether the data *itself* is sensitive." *Facebook*, 956 F.3d at 603. If *mere* "aggregation" sufficed, as Plaintiffs suggest, then neither inquiry would have been necessary: the court could have ended its analysis with the fact that Facebook collected a substantial amount of data. Instead, the court took pains to emphasize Facebook's alleged misrepresentations, the sensitive nature of websites where tracking happened, and Facebook's access to highly detailed individual Facebook profiles. *Id.* at 601-05. The facts alleged here come nowhere close to the extreme facts of *Facebook*. Further, Plaintiffs' broad theory lacks any semblance of a rational limiting principle that can be used to distinguish lawful from unlawful data aggregation activity.

Even if aggregation alone could be enough to state a claim under different facts, Plaintiffs

---

[4] The Court can consider the privacy policies for the websites cited in the Complaint even absent a formal request for judicial notice. *See Silva v. Haleon US Inc.,* 758 F. Supp. 3d 1082, 1086 (N.D. Cal. 2024) (court may take "sua sponte" judicial notice); *In re Zoom Video Commc'ns Inc. Priv. Litig.*, 525 F. Supp. 3d 1017, 1026 n.2 (N.D. Cal. 2021) (judicial notice of terms of service).

have not plausibly alleged that the "dossiers" here are "cradle-to-grave" like those in *Facebook*. Critically, LiveRamp does not maintain Facebook profiles, with their rich mix of employment history, friend groups, relationships, and the like. *See id.* at 598-99. The offline identifiers available to LiveRamp—contact information and the like—are far more circumscribed. Although Plaintiffs allege browsing data collection, LiveRamp trackers are alleged to have only *one percent* of the coverage Facebook had and are not alleged to operate on any sensitive website.[5]  (*Compare id.* at 603 (seven million websites), *with* AC ¶¶ 20, 35 (cookie on "hundreds" of websites); *id.* ¶ 79 (21,000 publishers with ATS).)  This is nothing like the comprehensive profiles in *Facebook*.

As for *Katz-Lacabe*, Plaintiffs' attempt to dismiss differences in the "scale" of collection as "quibbles," (Opp. at 12), makes no sense. Scale—the "aggregation" of large amounts of data— is Plaintiffs' entire theory. If the "specific numbers of websites tracked" is "irrelevant" (*id.*), then Plaintiffs' theory falls apart and their proposed rule is unworkable. *Katz-Lacabe* concluded that a claim based on Oracle's data collection was a "close question." *Katz-Lacabe v. Oracle Am., Inc.*, 668 F. Supp. 3d 928, 942 (N.D. Cal. 2023).  LiveRamp's alleged data collection is an order of magnitude smaller. Plaintiffs also ignore distinctions in the "means" of collection. Oracle allegedly used a deceptive web plug-in installed on fifteen *million* websites that was purportedly offered as a tool for sharing content on social media but in fact secretly tracked users' browsing activity; Oracle also installed cookies on forty-eight thousand websites. (Oracle Compl. ¶¶ 38, 41, ECF No. 1, No. 3:22-cv-04792-SK (Aug. 19, 2022).)  Nothing similar is alleged here.

Nor do any of Plaintiffs' other cited cases "mirror" the allegations here.  (Opp. at 10.)

• *Ross v. ATT Mobility, LLC* involved *both* (i) express promises of secrecy, and (ii) actual disclosure of information that this Court said was of "*higher*" sensitivity than *Facebook* because it allowed hackers to impersonate the plaintiff and access text messages, emails, and financial accounts. 2020 WL 9848766, at *8 (N.D. Cal. May 14, 2020) (Tigar, J.).

• *F.T.C. v. Kochava*, which was not a privacy tort case, involved allegations that the

---

[5] Although the Opposition mentions cookies allegedly present on CVS.com and similar websites (Opp. at 4), it does not meaningfully distinguish—and, in some cases, does not even mention— cases cited in LiveRamp's motion which preclude any reasonable expectation of privacy in web pages containing general health information.  (*See* Mot. at 10-11.)

defendant sold "non-anonymized" consumer profiles that included precise geolocation data about visits to sensitive locations, not merely data about browsing of non-sensitive websites.  715 F. Supp. 3d 1319, 1323-25 (D. Idaho 2024).  Plaintiffs do not allege that LiveRamp collects or sells sensitive geolocation data, or that it has shared de-pseudonymized data.  (AC ¶ 3.)

- *Brooks v. Thompson Reuters Corp.* involved the collection of sensitive data including geolocation data, financial information, employment histories, and criminal records.  2021 WL 3621837, at *1 (N.D. Cal. Aug. 16, 2021).  The defendant was not in the ad business at all but sold these records on a wholly non-anonymized basis for a range of purposes.  *Id.*

- *Griffith v. TikTok, Inc.* involved allegations that TikTok "circumvented" privacy settings to "evade" efforts to impose privacy controls.  697 F. Supp. 3d 963, 967 (C.D. Cal. 2023).  The *Griffith* court ultimately granted summary judgment to TikTok, finding no privacy violation.  *See Griffith v. TikTok, Inc.*, 2024 WL 5279224, at *9 (C.D. Cal. Dec. 24, 2024).

In short, there is no basis to find a reasonable expectation of privacy on the internet based *solely* on the aggregation of individually non-sensitive data points and without allegations that the data was improperly collected or disclosed.  As the court in *Hubbard* recognized, "[c]ontemporary internet browsing involves the collection of users' data, including by tracking users across the internet, and a reasonable user should expect as much."  2024 WL 3302066, at *7.[6]

## 2. Plaintiffs Fail to Allege Highly Offensive Conduct.

Even if Plaintiffs had alleged a reasonable expectation of privacy, they fall far short of establishing a highly offensive intrusion.  Plaintiffs concede that LiveRamp collects information for ad delivery—a routine commercial activity.  Rather than arguing the merits, Plaintiffs turn again to procedure, arguing that this question can never (or almost never) be resolved on a motion to dismiss.  Not so.  Courts can and do resolve the issue at this stage when—as with all issues on a motion to dismiss—the allegations "stop[] short of the line between possibility and plausibility

---

[6] Plaintiffs' other cases are inapposite FOIA cases, not privacy cases.  *See U.S. Dep't of Def. v. Fed. Lab. Rels. Auth.*, 510 U.S. 487, 500 (1994) (analyzing privacy in FOIA context under standard that "a very slight privacy interest would suffice to outweigh the relevant public interest"); *U.S. Dep't of Just. v. Reps. Comm. For Freedom of Press*, 489 U.S. 749, 764 (1989) (similar).

1  of entitlement to relief." *Twombly*, 550 U.S. at 557 (cleaned up); *see McCoy v. Alphabet, Inc.*,

2  2021 WL 405816, at *7 (N.D. Cal. Feb. 2, 2021) (collecting cases).[7]  Two weeks ago, the Ninth

3  Circuit affirmed dismissal for failure to allege highly offensive conduct.  *Thomas*, 2025 WL

4  1704437, at *1.  In *Facebook*, 956 F.3d at 603, the Ninth Circuit positively cited the Third Circuit's

5  decision in *Nickelodeon*, which affirmed the dismissal of data aggregation claims against Google

6  because Google's use of "third-party cookies on Nick.com in the same way that it deploys cookies

7  on myriad other websites" was not "sufficiently offensive ... to survive a motion to dismiss."  *In*

8  *re Nickelodeon Cons. Priv. Litig.*, 827 F. 3d 262, 294-95 (3d Cir. 2016)).[8]

9    This is a case that can be resolved on a motion to dismiss.  *First*, Plaintiffs do not even try

10  to argue that LiveRamp's collection of *offline* identifiers (phone numbers, addresses, driver's

11  licenses, etc.) is improper or highly offensive.  Plaintiffs cite no authority holding or even

12  suggesting that aggregating such information is privacy intrusive, much less highly offensive.

13  *Folgelstrom* is on point and defeats their claim.  195 Cal. App. at 992 (obtaining plaintiff's address

14  to mail ads was "not an egregious breach of social norms, but routine commercial behavior").

15    *Second*, Plaintiffs' allegations about *online* activity fare no better.  Contrary to Plaintiffs'

16  claim (Opp. at 14), courts *have* dismissed claims based on widespread internet tracking.

17  *Nickelodeon* affirmed dismissal of claims against Google because its use of third-party cookies on

18  "myriad" websites was deemed normal commercial behavior.  827 F.3d at 294-95.  *Hubbard*

19  involved tracking more "pervasive" (Opp. at 14) than is alleged here: "track[ing] individuals over

20  80% of the internet" *and* aggregating that with huge volumes of video viewing, account, and

21  geolocation data.  2024 WL 3302066, at *2-3.  Plaintiffs' assertion that *Hubbard* did not involve

22  allegations of "surreptitious" conduct is simply wrong.  (Opp. at 15.)  There, the plaintiffs *did*

23

---

24  [7] *See also Thomas*, 2024 WL 2060140, at *6; *Hubbard*, 2024 WL 3302066, at *6-8; *Hammerling*
25  *v. Google LLC*, 615 F. Supp. 3d 1069, 1088 (N.D. Cal. 2022); *Cousin v. Sharp Healthcare*, 681 F.
Supp. 3d 1117, 1126-27 (S.D. Cal. 2023); *Folgelstrom v. Lamps Plus, Inc.*, 195 Cal. App. 4th 986,
992-93 (2011); *Hill v. Nat'l Collegiate Athletic Assn*., 7 Cal. 4th 1, 40 (1994).

26  [8] In contrast, the *Nickelodeon* court reversed dismissal of claims against Viacom, based on the
27  same critical fact of deception that the Ninth Circuit held was integral in *Facebook*.  *See* 827 F.3d
at 293-94.  Whereas Google was not alleged to have deceived anyone about the scope of its data
28  collection, Viacom expressly promised not to collect data on children and thus "created an
expectation of privacy" that its actual practices violated.  *Id*. at 294-95.

1    allege that Google's data collection was surreptitious.  *Id.* at *7 n.9.  The court refused to credit

2    those assertions because *in general* consumers expect to be tracked, and the plaintiffs alleged no

3    "particularized" facts to overcome that basic reality.  *Id.*  Here, Plaintiffs' allegations are not only

4    conclusory, they contradict the privacy policies of websites they claim to have visited and their

5    allegation that consumers are inundated with privacy disclosures online.  (AC ¶¶ 155, 157.)

6         Contrary to the Opposition, LiveRamp cited several cases that involved multiple modes of

7    data collection and the combination of offline and online data.  (Mot. at 14-15.)  The Google cases

8    did not involve "Google data only."  Google tracked browsing on "third party sites" and combined

9    browsing information with offline user account information.  *In re Google, Inc. Privacy Pol'y*

10   *Litig.*, 58 F. Supp. 3d 968, 973-74 (N.D. Cal. 2014); *In re Google, Inc. Privacy Pol'y Litig.*, 2015

11   WL 4317479, at *4 (N.D. Cal. July 15, 2015); *Nickelodeon*, 827 F.3d at 270 ("Google and Viacom

12   'are able to link online and offline activity and identify specific users.'").  *Hammerling* involved

13   allegations that Google could infer from third-party app usage sensitive information such as users'

14   "religious and political affiliations, their activity level, their sexual preferences and proclivities,

15   and other habits and preferences."  615 F. Supp. 3d at 1078.  *In re Apple iPhone Application*

16   *Litigation* involved the disclosure of both offline information—*e.g.*, name, address and location—

17   and online information about app usage.  844 F. Supp. 2d 1040 (N.D. Cal. 2012).[9]

18        *Katz-Lacabe* is readily distinguishable.  As discussed, both the scale and means of the

19   collection involved there was far greater than is plausibly alleged here.  *See supra* at pages 5-6.

20        Articles and statements by privacy advocates are simply irrelevant.  The test is whether the

21   conduct is highly offensive to a *reasonable* person, *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272,

22   286 (2009), not whether there is someone somewhere who will complain about conduct,

23   particularly where there has been no showing that these individuals know the relevant facts.

24        Courts have long recognized not only that activity on the internet is not private, but that

25   the aggregation and collection of data is a routine commercial practice.  This is, after all, what

26

27   _____

28   [9] These cases are not "outdated."  (Opp. at 15 n.9.)  Although some may have been "unpersuasive"
     in cases with different allegations, courts continue to rely on *In re Google* and *In re iPhone* in
     cases like this one that are factually analogous.  *See, e.g.*, *McCoy*, 2021 WL 405816, at *7.

makes the internet free.  *In re Google*, 2015 WL 4317479, at *2 ("Free products are not, however, truly free.").  As in *Hubbard*, Plaintiffs effectively ask "the Court to characterize an entire industry as founded on tortious conduct," which should not be sanctioned.  *See* 2024 WL 3302066, at *7.  Plaintiffs' failure to plausibly allege misrepresentations or other "plus factors" that make LiveRamp's conduct highly offensive requires dismissal of their claims.  *See id.*

### 3. The California Legislature and Voters Have Not Deemed LiveRamp's Conduct to Be Highly Offensive.

Nor can Plaintiffs square their theory with the actions of the voters or the Legislature in passing the CCPA and Prop 24.  This is not a question of preemption.  None of Plaintiffs' cited cases involved privacy tort claims.[10]  None had occasion to consider the interplay between voters' policy choices and the requirement that a plaintiff plead an invasion of privacy that was highly offensive.  The question is whether Plaintiffs have plausibly alleged that the practice of collecting, aggregating, and trading non-sensitive information on the internet is an "egregious breach of the social norms." *Hernandez*, 47 Cal. 4th at 287.  Voter decisions are clearly relevant to determining "social norms."[11]  The Opposition does not even try to explain how their theory of the case can be squared with the voters and the Legislature acknowledging the existence of the data industry, acknowledging the value of online advertising, and choosing not to ban collection or sale of data but to "balance" concerns about privacy by implementing an "opt out" regime.  Plaintiffs' theory would overturn the judgment of the community contrary to the underlying rules of the privacy tort.

### 4. Plaintiffs' Data Marketplace Claims Fail.

Plaintiffs' invasion-of-privacy claims about Data Marketplace are exactly what Section 230 precludes.  Although Plaintiffs attempt to reframe the theory in their Opposition, the theory articulated in the Amended Complaint is that third-party sellers offered for sale "sensitive" data

---

[10]  Plaintiffs cited cases involved different statutory causes of action not the "highly offensive" inquiry for privacy torts.  *See Brooks*, 2021 WL 3621837, at *6 (UCL); *Mirmalek v. L.A. Times Commc'ns LLC*, 2024 WL 5102709, at *5 (N.D. Cal. Dec. 12, 2024) (CIPA); *Kellman v. Spokeo, Inc.*, 599 F. Supp. 3d 877, 897 (N.D. Cal. 2022) (UCL).

[11]  Courts can and do look to voter choices as indicators—often dispositive indicators—of whether conduct intruded on a reasonable expectation of privacy or was highly offensive.  *Cf. Safari Club Int'l v. Rudolph*, 862 F.3d 1113, 1130 (9th Cir. 2017); *Mintz v. Mark Barelstein Assocs.*, 906 F.Supp.2d 1017, 1034 (C.D. Cal. Nov. 1, 2012).

segments that, Plaintiffs say, LiveRamp should have blocked or removed.  But Section 230 expressly precludes claims against online marketplaces based on the content of product listings by third-party sellers.  (*See* Mot. at 18.)  None of the facts Plaintiffs allege change that outcome.

To begin, Plaintiffs plainly plead a publisher theory—that by hosting a marketplace where data brokers can sell data (AC ¶¶ 96, 102), LiveRamp is liable for the content of that data.  Plaintiffs cite segments they deem privacy-invasive (*id*. ¶ 98), and fault LiveRamp for failing to remove them.  (*Id*. ¶¶ 100, 107.)  But "any activity that can be boiled down to deciding whether to exclude material that third parties seek to post online is perforce immune."  *Fair Hous. Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157, 1170-71 (9th Cir. 2008).

Plaintiffs' argument that their claims are about the "collection and aggregation of personal data on the Data Marketplace" (Opp. at 18) rather than the contents of that data is nonsensical.  That is not the theory advanced in the Amended Complaint, and Plaintiffs cite no case holding or even hinting that the operation of a data marketplace is a form of data aggregation that gives rise to a privacy claim.  Plaintiffs' argument would amount to a blanket prohibition on any marketplace for advertising segments no matter how anodyne their contents.  But California law expressly contemplates the sale of consumer data.  Cal. Civ. Code § 1798.100(d).

Plaintiffs' argument that LiveRamp creates certain content related to Data Marketplace listings (Opp. at 18)—*e.g*., RampIDs used for ad delivery—is a red herring because RampIDs are not what is alleged to make the conduct illegal.  Contrary to the Opposition, Section 230 immunity is not lost merely because the platform creates *some* information involved in a transmission; immunity is lost only if a platform was "responsib[le] for *what makes the displayed content illegal or actionable*."  *Dyroff v. Ultimate Software Grp., Inc*., 934 F.3d 1093, 1099 (9th Cir. 2019) (emphasis added).  What makes (allegedly) offending segments actionable is their misuse or dissemination of sensitive data.  (*E.g*., AC ¶ 98.)[12]  Neither RampIDs nor any other LiveRamp tool dictate how or with what information third-party sellers build segments.  Rather, LiveRamp's functions, such as identity resolution, support the sale of *all segments* regardless of content.  The

---

[12] Plaintiffs effectively concede this by singling out a handful of segments as privacy invasive, out of hundreds of thousands allegedly present on the platform.  (AC ¶ 103.)

1   creation of such neutral tools does not destroy immunity.  *See Roommates.com*, 521 F.3d at 1169;

2   *La Park La Brea A LLC v. Airbnb, Inc.*, 285 F. Supp. 3d 1097, 1106 (C.D. Cal. 2017).[13]

3          A contrary holding would undermine Congress's goal of "promot[ing] the development of

4   e-commerce," a key objective of Section 230 immunity.  *Batzel v. Smith*, 333 F.3d 1018, 1027 (9th

5   Cir. 2003), *superseded by statute in other part as stated in Breazeale v. Victim Servs., Inc.*, 878

6   F.3d 759, 766-67 (9th Cir. 2017).  Transaction services are essential to online marketplaces.  If

7   providing those services removed immunity for third-party listings, marketplaces would "face

8   death by ten thousand duck-bites, fighting off claims that they promoted or encouraged—or at

9   least tacitly assented to—the illegality of third parties."  *Roommates.com*, 521 F.3d at 1174.

10         Nor have Plaintiffs stated a claim based on LiveRamp's alleged creation of "custom

11  segments" and "bespoke audiences."  (Opp. at 18-19.)  Plaintiffs have not alleged that any of those

12  segments were sensitive.  Alleging that LiveRamp has the technical ability to create segments is

13  not a plausible allegation that LiveRamp in fact created and sold segments that violate the law.

14  *See Dyroff*, 934 F.3d at 1099 (dismissal where defendant not responsible "for what ma[de] the

15  displayed content illegal or actionable"); *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1124-

16  25 (9th Cir. 2003) (immunity where "critical information" was provided by third-party web users).

17         These facts distinguish *F.T.C. v. Accusearch, Inc.*, 2007 WL 4356786 (D. Wyo. Sept. 28,

18  2007), *aff'd*, 570 F.3d 1187 (10th Cir. 2009), and *Brooks*, 2021 WL 3621837, cited in the

19  Opposition.  Both cases involved claims based on *first-party* sales: distribution of personal

20  information about plaintiffs that defendants purchased and then licensed or resold.  Here, there are

21  no well-pleaded allegations that LiveRamp itself created or sold the allegedly problematic

22  segments.  *See Levitt v. Yelp! Inc.*, 2011 WL 5079526, at *5 (N.D. Cal. Oct. 26, 2011), *aff'd*, 765

23  F.3d 1123 (9th Cir. 2014) (Yelp did not lose Section 230 immunity when complaint "d[id] not

24  raise more than a mere possibility that Yelp has authored or manipulated [offending] content").

25         **C.     Plaintiffs Fail to State a Claim Under CIPA or the ECPA.**

26                 **1.     The Crime-Tort Exception Does Not Overcome LiveRamp's**

27  [13] Plaintiffs' attempt to distinguish *Airbnb* ignores the extensive transaction services Airbnb
28  offered there.  *See Airbnb*, 285 F. Supp. 3d at 1100-01. While the services facilitated unlawful
    rentals, they did not contribute to the acts that made the rentals unlawful.  *Id.* at 1104.  So too here.

**Customers' Consent under the ECPA.**

Plaintiffs do not dispute that one-party consent exists but invoke the crime-tort exception. (Opp. at 20.)  This argument fails because, as set forth in LiveRamp's motion, LiveRamp's conduct is not criminal or tortious.  Even if it were, Plaintiffs plead no facts showing that "the primary motivation or a determining factor in the interceptor's actions has been to injure plaintiffs tortiously."  *Katz-Lacabe*, 668 F. Supp. 3d at 945 (citation omitted).  Courts have rejected the argument (Opp. at 20) that advertising purposes are "independently illegal or actionable."  *Pena v. GameStop, Inc.*, 670 F. Supp. 3d 1112, 1120 (S.D. Cal. 2023).  This is because, as courts have repeatedly held, the exception is inapplicable when the defendant's "purpose has plainly not been to perpetuate torts on millions of internet users, but to make money."  *Rodriguez v. Google, LLC*, 2021 WL 2026726, at *6 n.8 (N.D. Cal. May 21, 2021); *Katz-Lacabe*, 668 F. Supp. 3d at 945.[14]

The cases Plaintiffs cite for a contrary position are either distinguishable or unpersuasive. Plaintiffs rely on out-of-circuit cases, all of which acknowledge that the decisions departed from the prevailing position in this District.  *See In re Grp. Health Plan Litig.*, 709 F. Supp. 3d 707, 720 (D. Minn. 2023); *Stein v. Edward-Elmhurst Health*, 2025 WL 580556, at *5-6 (N.D. Ill. Feb. 21, 2025); *Castillo v. Costco Wholesale Corp.*, 2024 WL 4785136, at *6 (W.D. Wash. Nov. 14, 2024). Of the in-circuit cases Plaintiffs cite (Opp. at 20-21), two do not evaluate an argument that the defendant's purpose was commercial.  *See Brown v. Google*, 525 F. Supp. 3d. 1049, 1067 (N.D. Cal. 2021); *Planned Parenthood Fed'n of Am. v. Ctr. for Med. Progress*, 214 F. Supp. 3d 808, 827-28 (N.D. Cal. 2016).  Others fail to address whether the alleged torts were independent of the interception, which Ninth Circuit law plainly requires.  *See R.C. v. Walgreen Co.*, 2024 WL 2263395, at *15 (C.D. Cal. May 9, 2024) (finding plaintiffs "stated a claim or invasion of privacy" without separately evaluating whether invasion was independent of interception); *B.K. v. Desert Care Network*, 2024 WL 1343305, at *6 (C.D. Cal. Feb. 1, 2024) (similar); *cf. Planned Parenthood Fed'n v. Newman*, 51 F.4th 1125, 1136 (9th Cir. 2022) (crime-tort exception requires interception

---

[14] *E.g.*, *Roe v. Amgen Inc.*, 2024 WL 2873482, at *6 (C.D. Cal. June 5, 2024); *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 797 (N.D. Cal. 2022); *In re Google Inc. Gmail Litig.*, 2014 WL 1102660, at *18 n.13 (N.D. Cal. Mar. 18, 2014).

1    with intent to commit a tort that is "separate and independent from the act of the recording").

2                    **2.    LiveRamp Did Not Read or Attempt to Read Contents in Transit.**

3          The Opposition confirms Plaintiffs' failure to plausibly allege that LiveRamp attempted to

4    read or understand the contents of communications in transit, which is fatal to their interception

5    claim.  Plaintiffs appear to concede that *Torres* correctly construed Section 631(a) as requiring not

6    only interception but an attempt to "read or understand" the contents of a communication *while it*

7    *was still "in transit."*  Although Plaintiffs cite six paragraphs of the Amended Complaint that they

8    claim show real-time reading of the content of communications (*see* Opp. at 21-22), none do:

9    •    Paragraphs 3 and 6 allege in conclusory fashion that LiveRamp has the capability to update

10         its identity graphs in real time, but do not allege that this process involves reading or

11         understanding the contents of communications while they are in transit.  (AC ¶¶ 3, 6.)

12   •    Paragraphs 79 and 217 address only the alleged *interception* of communications and say

13         nothing about LiveRamp reading communications while in transit.  (*Id.* ¶¶ 79, 217.)

14   •    Paragraph 87 is about "data onboarding" or "activation," services that allegedly support ad

15         delivery.  (*Id.* ¶ 87.)  This paragraph does not reference interception.  And other paragraphs

16         in the Amended Complaint affirmatively allege that LiveRamp performs onboarding and

17         activation services using data files provided by its customers, (*id.* ¶ 83), not through real-

18         time reading or interpretation of the contents of intercepted communications.

19   •    Paragraph 90 references a service called ATS by which LiveRamp allegedly converts

20         emails used for website logins into RampIDs.  It does not allege that LiveRamp reads or

21         interprets the contents of any communication in real-time but instead alleges that RampIDs

22         can be used with a tool that enables advertisers to deliver ads in real time.  (*Id.* ¶ 90.)

23   These inapposite citations only confirm Plaintiffs' failure to plead a required element of the claim.

24         Plaintiffs' attempts to distinguish *Torres* fare no better.  It is irrelevant that the *Torres* court

25   denied an earlier motion to dismiss in that case (Opp. at 23), because the motion addressed only

26   interception and not the read-in-transit element.  *See Hazel v. Prudential Fin., Inc.*, 2023 WL

27   3933073, *2-4 (N.D. Cal. June 9, 2023) (*sub nom. Torres*).  The court had no occasion in its earlier

28

ruling to address the sufficiency of the plaintiffs' read-in-transit allegations. *Id.*[15] Nothing in that ruling suggests an interception claim must necessarily proceed beyond the pleading stage.

Substantively, Plaintiffs are incorrect in their suggestion that *Torres* turned on the fact that the defendant *never* read the communications, even after they were in storage. (Opp. at 22-23.) The court's analysis of the read-in-transit element make clear that it was the absence of *real-time* interpretation that doomed the claim. *See Torres v. Prudential Fin., Inc.*, 2025 WL 1135088, at *7 (N.D. Cal. Apr. 17, 2025) (no showing defendant "attempted to understand or decipher the contents of Plaintiffs' communications on its webform while the communications were in transit").

Finally, contrary to the Opposition, neither *Facebook* nor *Torres*'s citation to it excuses plaintiffs from pleading the read-in-transit requirement in cases involving allegations of profile building. (Opp. at 23.) *Facebook* did not address interception or read-in-transit and expressly declined to decide whether those elements were plausibly alleged. *See* 956 F.3d at 608 ("We do not opine whether the Plaintiffs adequately pleaded the other requisite elements ….").

### 3. Plaintiffs Have Not Alleged LiveRamp Operates a Pen Register.

Plaintiffs do not dispute that construing "pen register" to broadly encompass internet tracking software would sweep in basic online functions that are integral to the internet's operation and "potentially disrupt a large swath of internet commerce." *Licea v. Hickory Farms LLC*, 2024 WL 1698147, at *4 (Cal. Super. Ct. Mar. 13, 2024). Plaintiffs seek to pursue this theory based on cursory analyses in a few non-precedential district court decisions. But those cases are unpersuasive because none discuss the rule of lenity that governs interpretation of criminal statutes or the legislative history cited by LiveRamp,[16] which highlight the legislature's narrow intent.

The California state cases that do address the legislative history and the rule of lenity have appropriately held that tracking internet information is not a "pen register." *Sanchez v. Cars.com Inc.*, 2025 WL 487194, at *3 (Cal. Super. Ct. Jan. 27, 2025). This authority reflects the common-sense view that if California's legislature had intended to pass a law that makes much of the

---

[15] LiveRamp inadvertently cited *Hazel* instead of *Mastel v. Miniclip SA*, 549 F. Supp. 3d 1129, 1137 (E.D. Cal. 2021), for the holding and quote in the parenthetical on page 21 of its motion.

[16] Only one of the cases Plaintiffs cite—*Shah v. Fandom, Inc.*, 754 F. Supp. 3d 924 (N.D. Cal. 2024)—references legislative history, and it does not address the passages in LiveRamp's motion.

1    internet illegal, it would have said so. The thorough analyses in these cases are persuasive and

2    better evidence of what the California Supreme Court would do than the cases Plaintiffs cite.

3        The federal pen register act says nothing about what the *California* legislature intended

4    with internet trackers. Plaintiffs do not engage with passages of the legislative history that reflect

5    a narrow intent to regulate telephonic trackers. (Mot. at 23.) And they improperly discount the

6    rule of lenity, which prohibits applying criminal statutes "beyond their plain intent." *DeMille v.*

7    *Am. Fed'n of Radio Artists*, 31 Cal. 2d 139, 156 (1947); Cal. Penal Code § 4. Between two

8    reasonable interpretations, the defendant must be given the benefit of every reasonable doubt as to

9    whether the statute applies. *In re Zerbe*, 60 Cal. 2d 666, 668 (1964). LiveRamp submits that the

10   statutory language and legislative history plainly establish that the California legislature had no

11   intention of unceremoniously criminalizing common internet practices that were widely utilized

12   at the time the law was enacted. But if there is any question, then the choice between a narrow

13   application of the statute and one that would upend the internet's basic architecture presents exactly

14   the sort of "egregious ambiguity" that calls for the rule of lenity to be applied. (Opp. at 24.)

15           **D.    Plaintiffs Fail to Plead an Unjust Enrichment Claim.**

16       Plaintiffs do not argue that LiveRamp's alleged data use rises to the level of "mistake,

17   fraud, coercion, or request," as required for an unjust enrichment claim. *See Russell v. Walmart,*

18   *Inc.*, 680 F. Supp. 3d 1130, 1133 (N.D. Cal. 2023) (Tigar, J.). Nor do they explain why any benefit

19   conferred on LiveRamp was unjustly retained. *See id.* Given that Plaintiffs challenge the alleged

20   monetization of data collected from third-party websites, they "must explain why the access they

21   received to those websites would not defeat the unjust enrichment claim." *Katz-Lacabe*, 668 F.

22   Supp. 3d at 946 n.11. They have not done so. It is no answer that the plaintiffs in *Katz-Lacabe*

23   survived a motion to dismiss after adding specific allegations, because Plaintiffs do not plead those

24   allegations here. (Opp. at 25.) There is no plausible allegation that Plaintiffs would have changed

25   their behavior had they known of LiveRamp's alleged conduct or that LiveRamp collected and

26   sold their "real-world location information." 2023 WL 6466195, at *6 (N.D. Cal. Oct. 3, 2023).

27   **III.    CONCLUSION**

28       For the foregoing reasons, LiveRamp's motion should be granted in its entirety.

1

2    Dated: June 30, 2025                    WILSON SONSINI GOODRICH & ROSATI
                                            Professional Corporation
3

4                                           By:/s/ *Matthew A. Macdonald*
                                            Matthew A. Macdonald
5                                           E-mail: matthew.macdonald@wsgr.com

6                                           Attorney for Defendants LIVERAMP, INC. and
                                            LIVERAMP HOLDINGS, INC.
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28