MATTHEW A. MACDONALD, SBN 255269
TREVOR N. TEMPLETON, SBN 308896
MADELYN Y. CHEN, SBN 346126
ROMAN A. GIEROK, SBN 361158
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
953 East 3rd Street, Suite 100
Los Angeles, CA 90013-1952
Telephone: (323) 210-2900
Facsimile: (866) 974-7329
Email: matthew.macdonald@wsgr.com
ttempleton@wsgr.com
madelyn.chen@wsgr.com
rgierok@wsgr.com

CAITLIN MCKELVIE, *pro hac vice*
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
95 S. State Street, Suite 1000
Salt Lake City, UT 84111
Telephone: (801) 401-8510
Facsimile: (866) 974-7329
Email: cmckelvie@wsgr.com

BOURGON B. REYNOLDS, *pro hac vice*
NANCY A. SMITH, *pro hac vice*
ROSE LAW FIRM
A Professional Association
809 South 52nd Street, Ste. A
Rogers, AR 72758
Telephone: (479) 435-2921
Facsimile: (479) 301-2449
Email: breynolds@roselawfirm.com
nsmith@roselawfirm.com

Attorneys for Defendants
LIVERAMP HOLDINGS, INC.
and LIVERAMP, INC.,

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

CHRISTINE RIGANIAN and DONNA SPURGEON, *on behalf of themselves and all others similarly situated*,

Plaintiff,

v.

LIVERAMP HOLDINGS, INC. and LIVERAMP, INC., *corporations organized under the laws of the State of Delaware*,

Defendant.

Case No.: 4:25-cv-824-JST

**DECLARATION OF STEPHEN FROST IN SUPPORT OF JOINT DISCOVERY LETTER BRIEF**

Before: Hon. Judge Jon S. Tigar

I, Stephen Frost, declare as follows:

1. I submit this declaration in support of LiveRamp's portion of the Parties' Joint Discovery Letter Brief. I have been employed by LiveRamp, Inc. since 2018. I am a Vice President of Product Management for the Live/Access portfolio at LiveRamp, Inc. I have held this position since June 2025. In that role, I oversee the Data Marketplace and Third-Party Attribute Append ("Attribute Append"). Prior to that role, from May 2023 to August 2024, I led LiveRamp's Activation product, which included brand data. From May 2020 to August 2024, I led various parts of LiveRamp's Activation product, including LiveRamp's dataset management systems. I have personal knowledge of the matters set forth in this declaration, and, if called upon to do so, could and would testify competently as to the matters set forth herein.

2. Plaintiffs' claims in their letter brief to the Court appear to reflect a misunderstanding of how Data Marketplace works and how LiveRamp manages the data that is available there. Plaintiffs appear to have a similar misconception about Attribute Append and other customer audience and segment files.

3. Contrary to the allegations of the Complaint, LiveRamp does not access or aggregate the data on Data Marketplace, Attribute Append, or other customer audience or segment data to create "dossiers" of consumer demographics, interests, or other characteristics. Nor does LiveRamp supplement LiveRamp's identity graphs using data from Data Marketplace, Attribute Append, or other customer audience or segment data.

4. Rather, Data Marketplace is a service where third-party sellers offer individual advertising segments (lists of pseudonymous identifiers for consumers who may have interests in certain products or may share other characteristics) to advertisers. The segment data on Data Marketplace belongs to, and is controlled by, the sellers who are offering that data for licensing. Similarly, once the data has been licensed to a buyer—the buyer, not LiveRamp—controls that data (subject to any contractual limitations with the seller). LiveRamp's sole role with respect to the segment data offered on Data Marketplace is to act as a data processor, processing the segments on behalf of and at the direction of the buyers and sellers. Beyond enforcement of

LiveRamp's policies, LiveRamp does not make independent decisions about how the segments are collected, organized, or used.

5. LiveRamp's relationship to segments on Data Marketplace is governed by contracts that restrict LiveRamp's ability to use the segment data and require notice to data controllers, including LiveRamp's Terms of Service ("TOS"), and its incorporated Data Processing Addendum ("DPA"), which are both publicly available on LiveRamp's website. Attached hereto as **Exhibit A** is a true and correct copy of LiveRamp's TOS, which is available at https://liveramp.com/liveramp-terms-of-service/. Attached hereto as **Exhibit B** is a true and correct copy of LiveRamp's DPA, which is available at https://liveramp.com/legal/dpa/.

6. Section 3 of the DPA includes restrictions on LiveRamp's use of "Company Personal Data," meaning data that Data Marketplace data sellers and others make available to LiveRamp in connection with LiveRamp's provision of data processing services. Section 3.2 states that "LiveRamp will Process Company Personal Data only for the Purposes," meaning the purposes defined by the customer as set forth in contracts with LiveRamp. Section 3.3 prohibits LiveRamp from using such data for any purpose other than as directed by the data controller. Section 9.4 provides, in part, "If LiveRamp receives a demand to retain, disclose, or otherwise Process Company Personal Data for any third party, including, but not limited to law enforcement or a government authority, then LiveRamp shall attempt to redirect the demand to Company by providing Company contact information to such third-party, or, if unable to redirect the demand, LiveRamp shall provide Company reasonable notice of the demand as promptly as feasible."

7. Plaintiffs' allegations appear also to misunderstand the product referred to as Attribute Append. Contrary to the allegations of the Complaint, that product does not permit buyers to search across Data Marketplace audience files for any purpose. Rather, it enables individual buyers to license attribute information directly from individual sellers who choose to make such data available through Attribute Append. A buyer can only append attributes from a single seller's file. Attribute Append does not permit cross-seller or cross-platform attribute searches. The data used in Attribute Append is maintained separately from Data Marketplace

audience files. It does not come from Data Marketplace and cannot be accessed there. LiveRamp does not offer any product that allows a buyer to aggregate attributes about individual consumers from Data Marketplace as described in the Complaint. As with Data Marketplace segments, LiveRamp acts exclusively as a data processor with respect to the attribute information available through Attribute Append, processing the data at the direction of third-party sellers and buyers, without exercising independent decision-making and subject to the provisions of the DPA.

8. Plaintiffs similarly misunderstand segment data uploaded by other customers (e.g., consumer brands). As with Data Marketplace, the data uploaded by these other customers, including through client-side tags, belongs to that customer, not LiveRamp.

9. This customer data is used for the customer's own purposes. For example, a LiveRamp customer (such as a shoe company) would install a client-side tag on its own website. The client configures the client-side tag in the manner it chooses. The client-side tag collects information and transmits data to a customer owned audience file where the customer's data is stored. Similarly, a customer can directly upload data to its audience file. The data is managed by the customer, not LiveRamp. Customers have access to only their own data, not other customers' data.

10. Beyond enforcement of LiveRamp's policies, LiveRamp does not make any decisions about what data is collected or how it is used. Rather, LiveRamp processes the data at the direction of the third-party customers, without exercising independent decision-making and subject to the provisions of the DPA.

11. There are more than 100 Data Marketplace sellers and more than 500 other customers with audiences in LiveRamp's systems.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 16th day of September, 2025, at San Francisco, California.

By: [signature]
Stephen Frost