UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTINA RIGANIAN, et al.,<br>Plaintiffs,<br>v.<br><br>LIVERAMP HOLDINGS, INC., et al.,<br>Defendants. | Case No. 25-cv-00824-JST (AGT)<br><br>**DISCOVERY ORDER; ORDER ON MOTIONS TO SEAL**<br><br>Re: Dkt. Nos. 130, 131, 132 |

***Discovery Dispute Regarding LiveRamp ROG 11.*** Plaintiffs are associated with hundreds of thousands of segments in LiveRamp's Data Marketplace. *See* Dkts. 130 at 4, 130-6 at 3. A "segment" is a "list of identifiers (such as cookieIDs, mobile advertising IDs, or hashed email addresses) associated with predicted characteristics or interests," such as "likely dog owner" or "recent car buyer." Dkt. 130-1, Tellefsen Decl. ¶ 3.

LiveRamp asserts, and Plaintiffs don't appear to dispute, that whether the segments are accurate is relevant to whether they disclose sensitive or private information about Plaintiffs, which in turn is relevant to Plaintiffs' invasion of privacy claims. LiveRamp thus seeks discovery on segment accuracy. With ROG 11, LiveRamp has asked Plaintiffs to "[i]dentify

all segments . . . in which You were included that You contend reflects an accurate Trait or Association of Yours . . . " Dkt. 130-5 at 9.

Full compliance with ROG 11 would require a major undertaking. Plaintiffs would need to review hundreds of thousands of segments. To reduce the burden, LiveRamp proposes a sampling. LiveRamp has offered to select 5,000 segments per Plaintiff. Each Plaintiff would answer ROG 11 as to those 5,000 segments. LiveRamp asserts that a 5,000-segment sample size would allow for statistical analysis of "both the entire population of segments and subsets across 100+ sellers who offer multiple segment types." Dkt. 130 at 4.

LiveRamp places several conditions on its sampling proposal. First, LiveRamp asks Plaintiffs to promise that they "will not object to, attempt to exclude, or rebut LiveRamp's use of statistical sampling regarding the accuracy of the segments." *Id.* Second, "should a Plaintiff refuse to respond for a given segment for reasons other than a good faith inability to answer," LiveRamp proposes that "(i) the Plaintiff [will] waive[] any claims relating to the subject matter of any such segment, (ii) the response will be construed as an admission that the segment does not reflect an actual trait or association of the Plaintiff, and (iii) LiveRamp may select replacement segments for review equal to the number of segments the Plaintiff has not answered as accurate or not accurate." *Id.*

Plaintiffs insist that the burden of answering ROG 11 for 5,000 segments per Plaintiff is still too great. Even if each Plaintiff spends only one minute per segment, she will need 83 hours to respond. *Id.* at 5 n.4. Plaintiffs also argue that at least some of LiveRamp's preconditions are unreasonable and "demonstrate that LiveRamp seeks to obtain a strategic in limine ruling on a contested merits issue." *Id.* at 6 n.5.

Plaintiffs propose a more modest sampling: each side can designate 100 segments (a total of 200), and Plaintiffs will "provide substantive answers to ROG 11" for those 200 segments. *Id.* at 6. Plaintiffs also offer their own sampling preconditions. Before the sampling, LiveRamp should be required (i) to "identify which segment is associated with which Plaintiff" and (ii) to "explain what the segments mean." *Id.* These preconditions are needed, Plaintiffs assert, because LiveRamp "produced segments for . . . both Plaintiffs in a single heap" and many segments are ambiguous. *Id.* at 4.

In response to Plaintiffs' proposal, LiveRamp says that 200 segments isn't enough to "permit statistically valid analysis." *Id.* LiveRamp also contends that Plaintiffs' proposed preconditions are either unnecessary or unworkable because (i) LiveRamp already "produced mapping tables that link each segment to a Plaintiff," *id.* at 3 (citing Dkt. 130-7 (excerpt of a mapping table)), and (ii) "LiveRamp is not in a position to clarify the 'meaning' of the segments because LiveRamp does not create them." *Id.* Rather, LiveRamp provides "the technical infrastructure" that allows advertisers and sellers to share segments. *Id.* at 2. Also, even if the meaning of certain segments is unclear, that's okay, says LiveRamp. "If Plaintiffs cannot determine now whether a segment accurately describes them, they may say so." *Id.* at 3–4.

The parties' proposals are far apart and have different shortcomings. On LiveRamp's end, although it's conceivable that 5,000 segments per Plaintiff could be a reasonable compromise (given that Plaintiffs are associated with hundreds of thousands of segments), the burden of responding to ROG 11 for 5,000 segments would still be significant, and it's unclear if the payoff would be worth it if Plaintiffs find many segments ambiguous. Also, two of LiveRamp's sampling preconditions—"that if Plaintiffs cannot answer as to the accuracy

of any of the 5,000 segments, they waive 'any claims relating to the subject matter of any such segment' and their answer will be 'construed as an admission that the segment does not reflect an actual trait or association of the Plaintiff'"—are too punitive and, as Plaintiffs note, appear to seek "strategic in limine ruling[s]." *Id.* at 6 n.5.

On Plaintiffs' end, their proposal doesn't address LiveRamp's concern that 200 segments wouldn't yield a statistically valid sample. LiveRamp hasn't offered an expert declaration on statistical significance, but even so, Plaintiffs haven't suggested that 200 segments would be statistically significant. Plaintiffs also haven't persuasively articulated why they cannot use LiveRamp's mapping tables to determine which segments correspond with which Plaintiff. Plaintiffs assert that the mapping tables are "labyrinthine," *id.* at 4, but characterizing the tables as such, without further description, isn't illuminating. LiveRamp filed an excerpt of one of its mapping tables with the Court. *See* Dkt. 130-7. The Court doesn't doubt that the complete version is likely very lengthy, but the general structure isn't that hard to follow. Finally, while Plaintiffs understandably seek clarification about ambiguous segments, the Court cannot require LiveRamp to provide clarification because LiveRamp didn't create the segments. *See* Dkt. 130 at 3.

Given these issues, the Court will take an iterative approach.

By November 18, 2026, each side shall select 50 segments per Plaintiff (200 in total). By December 2, 2026, Plaintiffs must identify which of those 200 segments are accurate (or were accurate at any time during the Relevant Period), which are inaccurate, and which are ambiguous such that their accuracy cannot be determined.

After Plaintiffs provide their responses, the parties shall meet and confer to address any concerns related to the segments and Plaintiffs' responses. If the sampling worked well,

the parties should add more segments in order to reach a statistically meaningful sample. If the sampling went poorly (e.g., if responding was more burdensome than expected or the responses weren't especially helpful), the parties should discuss alternatives. And if they cannot come to an agreement in that scenario, they may file another joint statement in which they offer competing approaches for how they would like to proceed.

***Motions to Seal.*** The parties have moved to seal portions of the record related to their discovery dispute. LiveRamp seeks to seal portions of Exhibit I (dkt. 130-9), which contains commercially sensitive pricing information, "comparisons between LiveRamp and its competitors," and "internal sales guidance." Dkt. 131 at 4. LiveRamp also seeks to seal "the number of segments in Data Marketplace that are associable with Plaintiffs." *Id.* at 3. Above, the Court used a rough estimate of that number: "hundreds of thousands." The parties publicly disclosed that rough estimate. *See* Dkts. 130 at 4, 130-6 at 3. But LiveRamp seeks to keep the specific number under seal because "competitors could use [it] in comparative marketing to LiveRamp's detriment, or to reverse-engineer or benchmark LiveRamp's matching capabilities." Dkt. 131 at 4.

For their part, Plaintiffs seek to seal portions of the joint statement that reveal "the names and descriptions of segments associated with Plaintiffs." Dkt. 135 at 2. Plaintiffs maintain that "[t]he segments constitute 'personal information' about [them] under the California Consumer Privacy Act ('CCPA') because they reflect inferences . . . . about Plaintiffs' intimate daily lives," including about their health and wellness. *Id.* at 2, 5.

Almost inevitably, at some point the parties will need to publicly disclose the number of segments associated with each Plaintiff and the substance of those segments. That information is material to claims and defenses in the case. But for now, the Court will allow the

parties to keep these specifics under seal. Both sides have offered more than conclusory statements in support of sealing, and unlike merits motions, "discovery is largely 'conducted in private as a matter of modern practice,' so the public is not presumed to have a right of access to it." *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1097 (9th Cir. 2016) (quoting *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33 (1984)).

The Court grants the motions to seal.

**IT IS SO ORDERED.**

Dated: November 12, 2026

Alex G. Tse
United States Magistrate Judge